IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**BRAEDEN BURGE by and through his**
**guardian at litem KELLY BURGE,**

No. 3:14-00605-ST

Plaintiff,

OPINION AND ORDER

v.

**COLTON SCHOOL DISTRICT 53,**

Defendants.

**MOSMAN, J.**,

This case presents the type of situation the Ninth Circuit recently analogized to walking a tightrope—a school administration faced with a potential threat of violence and therefore required to balance school safety against the constitutional rights of its students.[1] Here the Colton School District ("CSD") decided to suspend Braeden Burge ("Braeden") for his out-of-school comments made on Facebook. Braeden now alleges claims under 42 U.S.C. § 1983 for violations of his First Amendment right to free speech ("First Claim") and his Fourteenth Amendment right to due process ("Second Claim"). The parties filed competing motions for summary judgment and Magistrate Judge Stewart issued a Findings and Recommendation ("F&R") [23], recommending that summary judgment be granted in favor of Braeden on the First Claim and in favor of CSD on the Second Claim. Upon review, I agree with Judge Stewart's recommendations, and I ADOPT the F&R as my own opinion. I write only to address CSD's objection that the F&R failed to adequately account for Veronica Bouck's reaction when concluding that Braeden's comments did not trigger the school's ability to restrict speech that "would materially and substantially interfere with the requirements of appropriate discipline in the operation of the school." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 509 (1969) (citations omitted).

---

[1] "With the advent of the Internet and in the wake of school shootings at Columbine, Santee, Newtown and many others, school administrators face the daunting task of evaluating potential threats of violence and keeping their students safe without impinging on their constitutional rights. It is a feat like tightrope balancing, where an error in judgment can lead to a tragic result." *Wynar v. Douglas Co. Sch. Dist.*, 728 F.3d 1062, 1062 (9th Cir. 2013).

## BACKGROUND

At the time of the incident in question, Braeden was a fourteen-year-old eighth-grade student at Colton Middle School ("CMS"). Upon learning that he had received a "C" from his health teacher, Ms. Bouck, and subsequently being grounded by his mother for a portion of the summer, Braeden vented his frustration in a series of comments on his personal Facebook page. Braeden initially posted that he wanted to "start a petition to get mrs. Bouck fired, she's the worst teacher ever." After a friend asked "what did [Ms. Bouck] do?" Braedon responded "She's just a bitch haha." When his friend wrote back "XD HAHAHAHA!!," Braeden responded "Ya haha she needs to be shot." Braeden's mother monitors Braeden's Facebook page on a daily basis and within twenty-four hours instructed Braeden to delete the entire post, which he did.

Braeden posted these comments from his home computer on a day that school was not in session. Only those Facebook users whom Braeden had confirmed as "friends" would have been able to view the comments he posted. Braeden has never been Facebook friends with Ms. Bouck (or any other CMS or CSD employee or staff member) and did not intend for Ms. Bouck to see his comments. Braeden Decl. [14] ¶ 4. Braeden did not intend to threaten or otherwise communicate with Ms. Bouck and did not seriously believe that Ms. Bouck should be shot. Braeden Depo. [13] Ex. 1 pp. 33-34. Braeden was not even serious about starting a petition to get Ms. Bouck fired. *Id.* at 30. Instead, his only purpose in posting these comments was "to elicit a response from [his] friends, just to see what they thought about it." *Id.* at 29.

Six weeks later, the parent of another CMS student anonymously placed a printout of Braeden's Facebook post in the school mailbox of CMS's principal, Kara Powell. Upon receiving the printout, Principal Powell called Braeden to her office where she questioned him, showed him CSD's applicable policies, and gave him a three-and-one-half day in-school suspension. According to Principal Powell, Braeden was "respectful . . . and compliant." Powell Depo., [13] Ex. 6 p. 15. After deciding the punishment, Principal Powell also called Braeden's mother, who explained that she had already spoken with Braeden about the issue and argued that CMS could not discipline her child for misconduct that occurred outside of school. Principal Powell suspended Braeden despite Ms. Burge's opposition.

Braeden had never before been disciplined by CMS or CSD for any act of violence and had never been convicted of a juvenile crime of any kind. Neither Principal Powell nor CSD

2

Superintendent Linda Johnson investigated whether Braeden had access to or experience with guns, contacted the police, or referred him to a counselor. Furthermore, Principal Powell did not discuss the Facebook posts with any of Braeden's other teachers and did not investigate whether Braeden had made subsequent Facebook posts of a similar nature. Ms. Bouck did not take off any time from work as a result of Braeden's Facebook posts.

After his suspension, Braeden returned to classes and completed the last week of eighth grade without incident. Although Ms. Bouck was allegedly "scared," "nervous," and "upset" about Braeden's comments, and consequently asked the school administration to keep Braeden out of her class, she accepted the school's decision for Braeden to return and did not discuss the comments with him or with any other CMS teachers. Braeden also attended a class field trip supervised by Ms. Bouck. Unbeknownst to Braeden, he was followed that day by an educational assistant, who noted there were no disciplinary problems.

## LEGAL STANDARD

The magistrate judge makes only recommendations to the court, to which any party may file written objections. The court is not bound by the recommendations of the magistrate judge, but retains responsibility for making the final determination. The court is generally required to make a de novo determination regarding those portions of the report or specified findings or recommendation as to which an objection is made. 28 U.S.C. § 636(b)(1)(C). However, the court is not required to review, de novo or under any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the F&R to which no objections are addressed. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). While the level of scrutiny under which I am required to review the F&R depends on whether or not objections have been filed, in either case, I am free to accept, reject, or modify any part of the F&R. 28 U.S.C. § 636(b)(1)(C).

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the court "draws all

3

justifiable inferences in favor of the non-moving party." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

## DISCUSSION

CSD objects to Judge Stewart's conclusion that Braeden's comments did not trigger the school's ability to restrict speech that "would materially and substantially interfere with the requirements of appropriate discipline in the operation of the school." *Tinker* 393 U.S. at 509. Although the Supreme Court has never directly applied this test to off-campus student speech, the Ninth Circuit has done so, holding that "when faced with an identifiable threat of school violence, schools may take disciplinary action in response to off-campus speech that meets the requirements of *Tinker*." *Wynar v. Douglas Co. Sch. Dist.*, 728 F.3d 1062, 1069 (9th Cir. 2013). Accordingly, Judge Stewart applied the standard laid out in *Tinker* and concluded that Braeden's comments did not fit within its exception to First Amendment protections because the comments did not have a "material and substantial" impact on either classroom activities or administrative responsibilities.

CSD argues that Judge Stewart's analysis overlooks the effect that Braeden's comments had on Ms. Bouck—who was allegedly "scared," "nervous," and "upset," and consequently asked the school administration to keep Braeden out of her class. CSD contends that this reaction is sufficient to support a rational juror in finding that Braeden's comments caused a material and substantial interference with school discipline.[2] Therefore, CSD objects to Judge Stewart's conclusion that summary judgment is appropriate.

In analyzing the question of whether Ms. Bouck's reaction could reasonably support a finding that Braeden's comments caused a material and substantial interference with appropriate school discipline, it is helpful to compare the Ninth Circuit's decision in *Wynar* to the Third Circuit's decision in *J.S. ex rel. Snyder v. Blue Mountain Sch. Dist.*, 650 F.3d 915 (3rd Cir. 2011). In *Wynar*, a high-school student was temporarily expelled for sending MySpace messages from his home computer to his friends, bragging about his array of weapons,

---

[2] CSD additionally contends that the interference necessary to trigger *Tinker's* exception to First Amendment protections need not entail a potential school shooting, but might also include the effect on staff morale or the resulting obligation to vet purported jokes to decide if any need be taken seriously. While this may be true, CSD provides no evidence that any such secondary effects actually occurred.

threatening to shoot specific classmates on a specific date, and invoking the image of the Virginia Tech massacre. 728 F.3d at 1065–66. His friends, with whom he had apparently joked about school violence in the past, became alarmed by the escalating tenor of the comments and brought them to the attention of their football coach and subsequently the school principal. *Id.* Considering the comments a serious threat, the school officials contacted the police, suspended the student for ten days, and ultimately expelled the student temporarily. *Id.* Others within the school community also took the perceived threat seriously, including the father of one of the girls mentioned in the messages, who would not let his daughter return to school if the student was there. *Id.* at 1071. Consequently, even though the student insisted his comments were made in jest, the Ninth Circuit held that the school's punishment did not violate the student's First Amendment rights because the "school district officials reasonably could have predicted that they would have to spend considerable time dealing with parents' and students' concerns and ensuring that appropriate safety measures were in place." *Id.* (citation omitted).

In *J.S.*, a student was suspended for creating a fake MySpace profile parodying her middle-school principal with crude language and sexually explicit content. 650 F.3d at 920 . The profile generated "general rumblings" in the school, led to a disruption of one teacher's class, and caused the student counselor—who also happened to be the Principal's wife—to reschedule some meetings. *Id.* at 922–23. However, the Third Circuit held that because of the outrageous nature of the profile, no reasonable person could have taken it seriously, and the record indicated that no one actually did. *Id.* at 929. Furthermore, while the court acknowledged the discomfort the offensive speech might have caused the Principal, it held that this did not constitute a material and substantial disruption because "[t]he Supreme Court has held time and again, both within and outside of the school context, that the mere fact that someone might take offense to the content of the speech is not sufficient justification for prohibiting it." *Id.* at 930 n.7 (citing *Saxe v. State Coll. Area Sch. Dist.,* 240 F.3d 200, 215 (3rd Cir. 2001) (Alito J.)). Therefore, the Third Circuit held that the school violated the student's First Amendment rights because the fake profile did not create "a substantial disruption of or material interference with the school." *Id.* at 931.

Viewed in this context, Ms. Bouck's response—on its own—would not support a rational juror in finding that Braeden's comments caused a material and substantial interference with appropriate school discipline. Ms. Bouck's response is analogous to that of the Principal in *J.S.*,

5

who was "angry," "upset," and "humiliat[ed]" by the out-of-school speech of his students. *Id.* at 922, 929. Without more, Ms. Bouck's response is insufficient to constitute a material and substantial interference with appropriate discipline *at the school*. *See LaVine v. Blaine Sch. Dist.*, 257 F.3d 981, 989 (9th Cir. 2001) (holding that the decision to discipline speech must be supported by the existence of *specific facts* that could reasonably lead school officials to forecast disruption); *Chandler v. McMinnville Sch. Dist.*, 978 F.2d 524, 530 (9th Cir. 1992) (denying argument that certain speech is inherently disruptive and holding instead that finding of substantial and material interference under *Tinker* must be based on established facts). In Braeden's case, there is no more. The comments did not cause a widespread whispering campaign at school or anywhere else. No students missed class and no CMS employees, including Ms. Bouck, missed work. Although Ms. Bouck initially protested having Braeden back in her class, she accepted the school's decision for him to return and did not discuss the comments with either Braeden or with any other students or teachers at CMS. When Braeden returned from suspension, there were no further incidents and no discussions concerning the Facebook comments.

Perhaps most importantly, the school did not take any actions upon which a rational juror could find that it reasonably foresaw a threat to appropriate school discipline. Upon receiving the printout of Braeden's comments, neither Principal Powell nor Superintendent Johnson ever asked Braeden or his parents if he had access to guns, contacted the police, had Braeden evaluated by a mental health professional, discussed the comments with any of Braeden's other teachers, or investigated whether Braeden made similar, subsequent comments. Instead, Principal Powell simply required Braeden to sit in a school office near the teachers' mailboxes for three-and-a-half days. Without taking some sort of action that would indicate it took the comments seriously, the school can not turn around and argue that Braeden's comments presented a material and substantial interference with school discipline.

## CONCLUSION

Upon review of both the F&R and CSD's subsequent objections, I ADOPT the F&R as my own opinion. Accordingly, I DENY CSD's Motion for Summary Judgment [10] against Braeden's First Claim and GRANT it against Braeden's Second Claim. I GRANT Braeden's Cross Motion for Summary Judgment [12] on his First Claim and DENY it on his Second Claim.

CSD's conduct and policies violated Braeden's First Amendment rights to free speech. CSD must remove Braeden's suspension from his school records and compensate Braeden for his reasonable attorney fees, costs and disbursements pursuant to 42 U.S.C. § 1988.

IT IS SO ORDERED.

DATED this __17th__ day of April, 2015.


/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge