UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

BRAEDEN BURGE, by and through his
Guardian ad Litem, KELLY BURGE,

        Plaintiff,

        v.

COLTON SCHOOL DISTRICT 53,

        Defendant.

Case No. 3:14-cv-00605-ST

**FINDINGS AND
RECOMMENDATIONS**

**STEWART, Magistrate Judge:**

## INTRODUCTION

Plaintiff, Braeden Burge ("Burge"), filed this action against defendant, Colton School District ("CSD"), under 42 USC § 1983 for violating his First Amendment free speech and Fourteenth Amendment due process rights when it punished him for comments he made on his private Facebook page from the privacy of his own home, outside school hours, and while not participating in any school-sponsored activity. After the parties filed cross-motions for summary judgment, this court issued Findings and Recommendations, recommending that summary judgment should be granted in favor of Burge on his First Amendment claim (docket #23). On April 17, 2015, Judge Mosman issued an Opinion and Order adopting the Findings and Recommendations and ordering CSD to "remove Braeden's suspension from his school records

1 – FINDINGS AND RECOMMENDATIONS

and compensate Braeden for his reasonable attorney fees, costs and disbursements pursuant to 42 USC § 1988" (docket #27).

Burge has now filed a Motion for Attorney Fees and Costs (docket #31) seeking an award of attorney fees pursuant to 42 USC § 1988 in the amount of $97,391.00 and a Bill of Costs (docket #33) seeking recovery of costs in the amount of $1,350.00. For the following reasons, Burge should be awarded attorney fees in the reduced sum of $64,925.20 and his costs in full.

## FINDINGS

### I. Reasonable Attorney Fees

Attorney fees for the prevailing party in fee-shifting claims are calculated using the lodestar figure which is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Miller v. Los Angeles Cnty. Bd. of Educ.*, 827 F2d 617, 621 (9th Cir 1987), quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 US 546, 564 (1986). There is a strong presumption that the lodestar amount is reasonable. *Jordan v. Multnomah Cnty.*, 815 F2d 1258, 1262 (9th Cir 1987). In calculating the lodestar, the court must consider those factors identified in *Kerr v. Screen Extras Guild, Inc.*, 526 F2d 67 (9th Cir 1975), which have now been subsumed within the initial calculation. *Cunningham v. Cnty. of Los Angeles,* 879 F2d 481, 487 (9th Cir 1988). Subsumed factors include: (1) novelty and complexity of the issues; (2) special skill and experience of counsel; (3) quality of the representation; (4) the results obtained; and (5) the superior performance of counsel. After calculating the lodestar, the fee may be adjusted by any nonsubsumed factors identified in *Kerr*.

Burge was represented by the law firm of Lane Powell on a *pro bo*no basis as cooperating attorneys with the ACLU Foundation of Oregon which will receive any award of attorney fees. Patton Decl. (docket #32), ¶ 2. Based on the actual hours worked (490.6) by all attorneys and

paralegals, if billed at Lane Powell's standard hourly rates, Burge's total amount of attorney fees would be $186,437.00.  *Id*, ¶¶ 7, 9.  However, Burge is requesting a reduced award of $97,391.00 based only on the work performed by two attorneys, William Patton and Cozette Tran-Caffee, at a significant discount from their standard hourly rates.  The requested award is based on 156.5 hours incurred by Mr. Patton at hourly rates of $380-$416 and 136.6 hours incurred by Ms. Tran-Caffee at hourly rates of $253-269.  *Id*, ¶ 3.

Despite this voluntary reduction of over 40% by Burge's attorneys, CSD contends that the amount of attorney fees requested is unreasonable because it includes hours spent on the related state court case and because the hourly rates are too high.  CSD also seeks a 30% reduction in the fee award for time spent on unsuccessful claims and the unreasonable number of hours expended.

### A.     Hours Spent on Related State Court Case

CSD argues that because Burge was not the prevailing party in the prior state court case, he cannot recover fees for any legal services rendered during that lawsuit and should be limited to 186.3 hours expended by his attorneys after January 14, 2014.

Burge initially filed this case on July 27, 2012, in Clackamas County Circuit Court, alleging the same claims as in this case plus a claim under the Oregon Constitution pursuant to the writ of review procedures.  Patton Decl., ¶ 10; Mersereau Decl. (docket #39), ¶ 3 & Ex. 1. After conducting discovery and filing cross-motions for summary judgment, Burge voluntarily dismissed the state court action without prejudice on October 21, 2013, resulting in entry of a General Judgment of Dismissal on November 18, 2013, and an Order requiring him to pay CSD a prevailing party fee of $275.00.  Mersereau Decl., ¶¶ 3-5 & Exs. 2-3.  He then refiled his free

speech and due process claims in this court on April 11, 2014, but eliminated the claim under the Oregon Constitution.

Burge was not the prevailing party in the state court case, but may recover attorney fees for hours expended in that case which were necessary in order to prevail in this case. His fee request includes time spent obtaining discovery in the prior state court case, including depositions. The parties conducted no additional discovery after Burge refiled the case in this court, but relied on the discovery already conducted in the state court action. To prevail in this case, Burge not only was able to take advantage of the discovery conducted in the state court case, but also the legal research performed. However, he has eliminated any duplicative or inapplicable work from his fee request, including all hours spent drafting the state court complaint and the state court summary judgment briefing and working on the writ of review issues and anything else that applied only to the state court case. Whether performed in the prior state court case or in this case, the time expended was reasonable and necessary to obtain his successful result in this case. Therefore, Burge is entitled to recover those hours expended in the state court case that are not duplicative or unrelated to his claims in this case.

### B. Hourly Rates

The reasonable rate for legal services is "to be calculated according to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 US 886, 895 (1984). The court determines what a lawyer of comparable skill, experience, and reputation could command in the relevant community. *Id* at 895 n 11; *see also Robins v. Scholastic Book Fairs*, 928 F Supp 1027, 1033 (D Or 1996) ("In setting a reasonable billing rate, the court must consider the 'prevailing market rates in the relevant community' and determine what a lawyer of comparable skill, experience, and reputation could command in the relevant community."), *aff'd*, 116 F3d 485 (9th

Cir 1997).  The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation.  *Jordan*, 815 F2d at 1263.  The District of Oregon uses the most recent Oregon State Bar Economic Survey ("OSB Survey") as a benchmark for assessing the reasonableness of hourly billing rates.  *Sterling Sav. Bank v. Sequoia Crossing, LLC*, Civ. No. 09–555–AC, 2010 WL 3210855, at *8 (D Or Aug. 11, 2010) ("This court uses the Economic Survey's 'Hourly Billing Rate by Total Years Admitted to Practice' chart to find a reasonable rate based on an attorney's years of practice, and does not award higher rates without some justification for doing so."); *McElmurry v. U.S. Bank Nat'l Ass'n*, Civil No. 04-642-HA, 2008 WL 1925119, at *3 (D Or Apr. 30, 2008).

Relying solely on the most recent 2012 OSB Survey and affidavit from one of his attorneys, Burge's two attorneys each seek hourly rates based on the 95th percentile of attorneys in the Portland area with corresponding years of experience, adjusted for inflation.  Patton Decl., ¶ 4.  Those rates range from $380-416 for Mr. Patton, a senior litigation partner who was admitted to the Oregon bar in 1997, has substantial federal court litigation experience, and has an expertise in ERISA disputes.  *Id*, ¶¶ 4-5.  Those rates range from $253-269 for Ms. Tran-Caffee, a junior associate, who was admitted to the Oregon bar in 2012 and has litigated one civil rights case to trial.  *Id*, ¶¶ 3, 6.  Although these rates are substantially less than the usual hourly rates of $410-490 for Mr. Patton and $280-310 for Ms. Trans-Caffee, CSD contends that they are too high.  This court agrees.

Rates above average for attorneys with corresponding years of experience, such as rates in the 75th percentile, are reserved for specialists in the field that was the subject of the lawsuit.

5 – FINDINGS AND RECOMMENDATIONS

*See, e.g.*, *McElmurry*, 2008 WL 1925119, at *3 ("Experienced senior attorneys who are specialists in [the field] will receive an hourly rate at the 75th percentile rate for their level of experience . . . ."). Neither of Burge's attorneys are civil rights specialists entitling them to rates in the 95th percentile for attorneys in the Portland area with corresponding years of experience. Based on the limited information submitted, both attorneys should receive no more than the average rates for attorneys in the Portland area with corresponding years of experience.

Although Ms. Tran-Caffee, who was admitted to practice in 2012 (the same year that the related state court case was filed) and who has litigated one civil rights case to trial, no other information has been provided to lead the conclusion that she should be considered a specialist in the field of §1983 First Amendment or due process claims. She may have more trial experience than her peers, but this case did not go to trial as it was resolved on summary judgment motions. Moreover, in the context of attorney fees, this District has been particularly skeptical of any junior attorney's claim to expertise or specialized experience. *See McElmurry*, 2008 WL 1925119, at *3. Therefore, Ms. Tran-Caffee is not entitled to fees in the 95th percentile, or even the 75th percentile, of attorneys with her same experience. Instead, she is entitled to no more than the average or median hourly rate. According to the 2012 OSB Survey, an attorney of Ms. Tran-Caffee's experience of 0-3 years in the Portland area has an average hourly rate of $182 and a median hourly rate of $175. Giving her the benefit of the higher rate, Ms. Tran-Caffee is, accordingly, entitled to fees of $182 for each hour she worked.

Mr. Patton's primary areas of expertise are insurance coverage litigation and disputes involving ERISA. Patton Decl., ¶ 5. Mr. Patton may have significant federal court litigation experience, but not in §1983 claims against municipalities or in First Amendment or due process claims. Therefore, he is not entitled to fees in the 95th percentile, or even the 75th percentile, of

attorneys with his same experience.  Instead, he is entitled to no more than the average or median rate.  According to the 2012 OSB Survey, an attorney of Mr. Patton's experience of 16-20 years in the Portland area has an average hourly rate of $256 per hour and a median hourly rate of $250.  Again, giving him the benefit of the higher rate, Mr. Patton is, accordingly, entitled to fees of $256 for each hour he worked.

As the adjustment for inflation for work performed in 2013, 2014 and 2015, Burge applies the compound annual growth rate of 3.08%, calculated on the growth in average hourly rates for Portland attorneys as purportedly reflected in the 2007 and 2012 OSB Surveys.  However, the CPI Inflation Calculator available from the United States Department of Labor[1] shows that the inflation rates were negligible between 2012 and 2015 ($1.00 in 2012 has the same buying power as $1.04 in 2015).  Thus, no adjustment should be made for inflation for hours worked in 2013, 2014 and 2015.

### C.    Unsuccessful Claims

CSD argues that Burge is not entitled to recover any fees for time his attorneys spent on his unsuccessful due process claim.  While both of Burge's claims undoubtedly arose from the same event (three day in-school suspension), CSD asserts that the due process claim relied on additional factual allegations that were different from, and irrelevant to, those made to support his First Amendment claim.  However, 42 USC § 1988 permits the recovery of fees on related but unsuccessful civil rights claims that share either "a common core of facts or . . . related legal theories" with a successful claim.  *Webb v. Sloan*, 330 F3d 1158, 1168 (9th Cir 2003).  Claims are "unrelated" only where they are "entirely distinct and separate" from the claims on which the plaintiff prevailed.  *Id*, citing *Sorenson v. Mink*, 239 F3d 1140, 1147 (9th Cir 2001).  Here, both of Burge's claims were based on the same punishment imposed by CSD for the same off-campus

---

[1] Available at http://www.bls.gov/data/inflation_calculator.htm.

Facebook comments. They share a common core of facts. Thus, the fees for work on both of those claims is recoverable.

Even so, CSD asks this court to exercise its discretion to reduce Burge's requested fees because the due process claim had so little merit. As this court held, Burge was not deprived of any property interest on which to base a claim that he was denied that property interest without due process, and even if he had been deprived of a property interest, controlling decisions rendered in the same kinds of due process claims reveal its lack of merit. However, the standard is not the claim's lack of merit, but whether it is sufficiently related to the successful claim. It meets the appropriate standard.

### D. Unreasonable Hours

CSD points out that when Burge filed this action, his attorneys had little to do but redraft the complaint filed in state court and revise the summary judgment briefs. According to the time records submitted by Burge's attorneys, they spent about 35 hours drafting the complaint filed in this court, even though it closely resembles the complaint filed in state court. Mersereau Decl., Ex. 1. Burge's attorneys spent another 150 hours primarily drafting summary judgment briefs. As is demonstrated by the respective tables of contents set forth in Burge's state and federal summary judgment briefs (*id*, Ex. 4), the authorities and argument submitted on the federal claims in each case were largely the same. Thus, CSD contends that the 35 hours spent drafting the complaint and 150 hours spent researching and drafting summary judgment briefs is excessive and should be reduced.

Burge responds that CSD overlooks his change in litigation strategy between the state court and federal court actions and the need to continuously update research in this rapidly developing area of law. Since this area of law is rapidly developing with changes in technology,

8 – FINDINGS AND RECOMMENDATIONS

it is reasonable to continuously update the legal research. However, the only change in Burge's litigation strategy between state and federal court was to drop his claim for violation of the Oregon Constitution. The named defendant and legal theories remained the same. Thus, whatever strategy was involved to move this case from state to federal court does not explain the expenditure of so many hours to redraft the complaint for that limited purpose.

On the other hand, Burge's fee request does not include any of the time spent drafting the state court complaint or the state court summary judgment briefing, both of which were necessary to successfully prosecute the case in this court. Therefore, the question is whether it was reasonable to spend 35 hours to both draft the initial complaint in state court and the revisions for filing it in federal court and 150 hours to both draft the initial summary judgment briefs in state court and the revisions for filing them in federal court. The initial complaint fills 16 pages and includes many factual allegations, and the federal complaint is 18 pages long with a number of revisions to the factual allegations. Burge's summary judgment briefs are lengthy and supported by a number of affidavits. In addition, the time incurred on the summary judgment motions includes at least 24 hours responding to CSD's objections to the Findings & Recommendations. Given the complexity of this case, this court cannot conclude that 35 hours to draft and revise the complaint and 150 hours to draft and revise the summary judgment briefs in this case is inherently unreasonable.[2] Therefore, the court should decline CSD's invitation to reduce the number of hours requested by Burge's attorneys by 30%.

Accordingly, Burge should be awarded attorney fees in the sum of $64,925.20 based on 156.5 hours incurred by Mr. Patten at $256 per hour ($40,064) and 136.6 hours incurred by Mr. Tran-Caffee at $182 per hour ($24,861.20).

---

[2] CSD has not submitted the number of hours its attorneys expended on the summary judgment briefs as a basis for comparison.

9 – FINDINGS AND RECOMMENDATIONS

**II.    Costs**

CSD does not object to Burge's request to recover his $400.00 filing fee, but objects to paying $950.00 for transcript fees for depositions taken in the state court case. However, Burge's decision not to engage in duplicative discovery in this case should not bar otherwise recoverable fees. The governing statute allows recovery of fees for "transcripts necessarily obtained for use in the case." 28 USC § 1920(2). The deposition transcripts were necessarily obtained for use in this case since they provided much of the basis for Burge's cross-motion for summary judgment and the court's decision. Thus, Burge should be awarded his $950.00 in deposition transcript fees in addition to his $400.00 filing fee.

## RECOMMENDATIONS

For the reasons set forth above, plaintiffs Motion for Attorney Fees and Costs (docket #31) should be granted in the reduced amount of $64,925.20 and the Bill of Costs (docket #33) should be granted in the amount of $1,350.00.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due Monday, July 20, 2015. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED  July 2, 2015.

              s/ Janice M. Stewart
              Janice M. Stewart
              United States Magistrate Judge